UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANDREW G.,

                                        Plaintiff,

v.                                                          3:19-CV-0942
                                                                (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LACHMAN & GORTON                                PETER A. GORTON, ESQ.
  Counsel for Plaintiff
1500 E. Main Street
Endicott, New York 13761

U.S. SOCIAL SECURITY ADMIN.                    AMY C. BLAND, ESQ.
  Counsel for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**MIROSLAV LOVRIC**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Andrew G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying his application for Social Security Disability Insurance ("SSDI").

(Dkt. No. 1.)  This case has proceeded in accordance with General Order 18 of this Court which

sets forth the procedures to be followed when appealing a denial of Social Security benefits.

Currently before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings. (Dkt. Nos. 7, 12.)  For the reasons set forth below,

Plaintiff's motion for judgment on the pleadings is granted and this case is remanded to the

Social Security Administration ("SSA") for a *de novo* review.

## I.   PROCEDURAL HISTORY

On November 2, 2017, Plaintiff filed an application for SSDI, alleging that he became

disabled on September 15, 2016, due to post traumatic stress disorder ("PTSD"), depression,

anxiety, hypervigilance, carpal tunnel syndrome, and tendon damage in his right wrist.

(Administrative Transcript ("T.") 166-167, 210.)  His application was denied initially on

December 21, 2017. (T. 71-76.)  Plaintiff requested a hearing which was held on July 11, 2018,

before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke.  (T. 27-46.)  The ALJ also

held a supplemental hearing on March 27, 2019, at which vocational expert ("VE") Josiah

Pearson testified.  (T. 47-55.)  The ALJ issued an unfavorable decision on April 2, 2019.  (T. 10-

26.)  This became the Commissioner's final decision when the Appeals Council denied

Plaintiff's request for review on June 7, 2019.  (T. 1-6.)

## II.   GENERALLY APPLICABLE LAW

### A.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

2

whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]."  *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

**B.      Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of

---

[1]      The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and
Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited
interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.
1983) (citation omitted).

> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

## III.   <u>FACTS</u>

As of the date of the first administrative hearing in July 2018, Plaintiff was 36 years old.

(T. 44.)  Plaintiff was a high school graduate, having attended regular education classes.  (T.

959.)  Following high school, he served four years in the United States Marines, including two

combat tours in Afghanistan.  (T. 31, 2199.)  Following his discharge from the military, Plaintiff

worked at a grocery store, a caterer, and a vending machine company.  (T. 33, 235-236, 373.)

Most recently, he had worked as a commercial cleaner for a janitorial services company.  (T. 34-

35, 236.)  He was unmarried and shared a house with a roommate.  (T. 959.)

While serving in Afghanistan in November 2011, Plaintiff was thrown from a personnel

transport vehicle after it struck an improvised explosive device ("IED").  (T. 1594.)  He lost

consciousness and may have suffered a concussion.  (T. 348, 373, 1594.)  The next day, Plaintiff

was in another transport vehicle that was struck by an IED.  (T. 1594.)  He did not lose

consciousness but reported feeling confused for about fifteen minutes after the explosion and

suffering from a headache for the rest of the day.  (*Id.*)

Since 2015, Plaintiff has received in-patient and out-patient mental health services for

depression, anxiety, PTSD, and alcohol use disorder at various Office of Veterans Affairs

("VA") medical facilities.  (T. 1596.)  His symptoms included re-experiencing traumatic events

from his military service, lack of interest, feeling distant or isolated from other people, difficulty

sleeping, and irritability.  (T. 349, 370, 690.)  At various times, Plaintiff was considered a high

suicide risk.  (T. 289, 695, 1227.)  His treatment included multiple stays in a 28-day in-patient

alcohol rehabilitation facility, and a three-month hospitalization for mental health issues.[2]  (T.

43-44, 331, 959.)  He had also undergone treatment for severe alcohol withdrawal symptoms,

including seizures and hallucinations.  (T. 320, 327, 1021.)

The record includes Plaintiff's lengthy treatment history.  Rather than summarizing the

records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's

arguments.

## IV.  THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements

through September 30, 2020.  (T. 15.)  After finding that Plaintiff did not engage in substantial

gainful activity ("SGA") after the alleged onset date of September 15, 2016, the ALJ found that

Plaintiff's "mental impairments as variously characterized" were a severe impairment.  (T. 15-

16.)  The ALJ noted that different physicians had diagnosed Plaintiff as suffering from PTSD,

depressive-related disorder, and drug and alcohol abuse but that the relevant inquiry for her

decision was the functional impact of Plaintiff's mental impairments, rather than the specific

diagnosis.  (T. 16.)

---

[2]     Plaintiff was unable to physically attend his July 11, 2018, administrative hearing due to
an extended hospitalization for mental health treatment but participated by telephone.  (T. 43-44,
124.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment.  (T. 16-18.) At step four, the ALJ found that Plaintiff had no physical limitations and therefore could perform work at all exertional levels, with certain limitations related to Plaintiff's mental impairments. (T. 16-21.)  Specifically, the ALJ found that Plaintiff retained:

> the ability to understand and follow simple instructions and directions, perform simple tasks independently, maintain attention and concentration for simple tasks, and regularly attend to a routine and maintain a schedule.  He can handle simple, repetitive work-related stress in that he can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that do not require him to supervise or manage the work of others.  [Plaintiff] should avoid work requiring more complex interaction or joint effort to achieve work goals.  He also should have no contact with the public.

(T. 18.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p.  (*Id*.)  The ALJ further stated that she considered opinion evidence in accordance with 20 C.F.R. § 404.1520c.  (*Id*.)  The ALJ also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 19.)

Based on the RFC and VE Pearson's testimony, the ALJ determined, at step four of the sequential evaluation, that Plaintiff was capable of performing his past relevant work as a commercial cleaner, as actually and generally performed.  (T. 21.)  Accordingly, the ALJ found

that Plaintiff was not disabled at any time from his alleged onset date to the date of the ALJ's decision. (T. 21-22.)

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

1.     The ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly assess the opinions of Plaintiff's treating psychiatrist. (Dkt. No. 7 at 7-19.)

2.     The ALJ erred by ignoring Plaintiff's limitations with regard to attendance and work pace.  (Dkt. No. 7 at 5-7.)

Defendant contends that the ALJ's decision is supported by substantial evidence, countering each of Plaintiff's arguments.  (Dkt. No. 12 at 4-20.)   For the reasons stated below, this Court concludes that the ALJ erred in evaluating the medical opinion evidence and finds that her RFC determination was not supported by substantial evidence.  As a result, the ALJ's analysis at step four, and the ultimate finding that Plaintiff was not disabled, were tainted.  Accordingly, the Court orders a remand for further administrative proceedings to properly assess the medical evidence related to Plaintiff's impairments in connection with the Commissioner's RFC determination.

## VI.   RFC AND MEDICAL OPINION EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* 17-CV-0580, 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)).  An ALJ must specify the functions that a plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Sullivan v. Sec'y of Health and Human Servs.*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)); *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (Sharpe, J.). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.

*Natashia R. v. Berryhill*, 17-CV-1266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

---

[3]    Plaintiff's application was dated November 2, 2017.  Thus, the new regulations apply in his case.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.    Application

In reaching her RFC determination, the ALJ considered a number of medical opinions related to Plaintiff's physical and mental limitations. (T. 18-21.)  With regard to Plaintiff's physical abilities, Dr. Gilbert Jenouri performed a consultative examination of Plaintiff on December 7, 2017.  (T. 953-958.)  Based on that examination, Dr. Jenouri opined that Plaintiff

had minimal to mild restrictions with regard to lifting and carrying with his right arm.  (T. 956.)
He also opined that Plaintiff was restricted from driving or operating heavy machinery.  (*Id*.)
State agency medical consultant Dr. Azmat Saeed reviewed Plaintiff's available medical records
in December 2017 and opined that Plaintiff's physical conditions were "non-severe" but that
Plaintiff "should adhere to seizure precautions" in the workplace.  (T. 62.)

The ALJ found the opinions of Dr. Jenouri and Dr. Saeed to be "partially persuasive."
(T. 19-20.)  She found the minimal exertional, postural, or manipulative limitations described in
their opinions to be supported by Dr. Jenouri's examination notes and Plaintiff's reported
activities. (T. 20.)  However, she did not find record support for restrictions on the use of heavy
machinery or the need for seizure precautions. (*Id*.)

Dr. Sara Long performed a consultative psychiatric examination of Plaintiff on December
7, 2017.  (T. 959-962.)  Based on her examination, Dr. Long opined that Plaintiff had no
limitations with regard to simple and complex tasks and making appropriate decisions.  (T. 961.)
She further opined that Plaintiff was able to maintain attention and concentration, keep a regular
schedule, interact adequately with others, and appropriately regulate his emotions and behavior.
(*Id*.)  Dr. Long diagnosed Plaintiff with PTSD and alcohol abuse "in early remission." (T. 962.)

Dr. Edward Kamin, a state agency psychologist, reviewed Plaintiff's available medical
record in December 2017.  (T. 66-68.)  Based on those records, Dr. Kamin opined that Plaintiff
had moderate limitations with regard to understanding, remembering, and carrying out detailed
instructions.  (T. 66-67.)  He also opined that Plaintiff was moderately limited in his ability to
maintain attention and concentration for extended periods, to maintain a regular schedule and
attendance, complete a normal workday and workweek, and perform at a consistent pace.  (*Id*.)

In Dr. Kamin's opinion, Plaintiff was also moderately limited in his ability to interact appropriately with the general public and get along with coworkers without distracting them or exhibiting behavioral extremes.  (T. 67.)

The ALJ found the opinions of Dr. Long and Dr. Kamin to be persuasive.  (T. 20.)  She based this finding on the consistency between the two opinions, the corresponding results from Dr. Long's examination of Plaintiff, and Plaintiff's reported daily activities.  (*Id*.)

Dr. Sean O'Hagen had been Plaintiff's treating psychiatrist for more than four years at the time of the decision. (T. 38.)  On May 22, 2018, Dr. O'Hagen opined that:

> [Plaintiff] is rated as 100% Serviced Connected for his diagnosis of PTSD.  Independent of [Plaintiff's] alcohol use, it is the writer's opinion that this PTSD would likely have the same impact on functioning.  It is known that substance abuse is related to PTSD, often utilized as an avoidance mechanism (symptom of PTSD) or to self-medicate PTSD symptoms.  It is writer's opinion that at this time [Plaintiff's] pattern of continued alcohol use is subsumed under PTSD diagnosis.

(T. 964.)

Dr. O'Hagen also completed a check-box form dated May 22, 2018, related to the functional limitations arising from or related to Plaintiff's mental impairments. (T. 1723-24.) Here, he opined that Plaintiff had "extreme"[4] limitations in the following functional areas: maintaining regular attendance without interruptions from psychologically based symptoms; performing activities within a schedule, being punctual; performing at a consistent pace; and responding appropriately to ordinary stressors in a work setting with simple tasks.  (T. 1723.)

---

[4]     The form defined an "extreme" limitation as a major limitation that resulted in no or very little useful ability to function in a particular area.  (T. 1723.)

Dr. O'Hagen also opined that Plaintiff had "marked"[5] limitations in getting along with co-workers, and "medium"[6] limitations in maintaining attention and concentration as well as interacting appropriately with the general public.  (*Id*.)

Dr. O'Hagen noted that his opinion of May 22, 2018, addressed Plaintiff's condition for the period between November 2015 and May 2018.  (T. 964.)  On February 11, 2019, Dr. O'Hagen issued a brief addendum opining that Plaintiff's condition and limitations were "about the same" as described in May 2018. (T. 1722.)

The ALJ found that Dr. O'Hagen's May 2018 and February 2019 opinions were "unpersuasive because they are not supported by or consistent with [Plaintiff's] mental status exams, reported activities or other medical opinions of record."  (T. 21.)  In reaching this conclusion, the ALJ stated that "[a]n OCR was performed of more than 1400 pages of VA records looking for Dr. O'Hagen's name and the notes where it appears are almost exclusively about [Plaintiff's] alcohol abuse.  Mental status examinations focusing on any PTSD are absent."  (T. 21.)

Plaintiff contends that the ALJ's stated reliance on unspecified "OCR," or Optical Character Recognition technology to electronically search for Dr. O'Hagen's name was an error requiring remand because there can be no assurance that the search was reliable, given the

---

[5]      The form defined a "marked" limitation as a serious limitation that resulted in a substantial loss (greater than 33%) in the ability to effectively function in a particular area.  (T. 1723.)

[6]      The form defined a "medium" limitation as "more than slight but less than a serious limitation" where the "individual is still able to function satisfactorily for a certain portion of the day and/or perform the tasks satisfactorily on some of the occasions.  The approximately loss would be more than 20% for the particular activity but less than 1/3 of the day."  (T. 1723.)

potential for software defects or user errors that would omit relevant documents from the search results.  (Dkt. No. 7, at 8.)  Plaintiff also contends that his due process rights were violated because he was "entitled to have [his] case decided by an Administrative Law Judge, not a computer."  (*Id.*)

Both are reasonable arguments related to the appropriate use of technology that have yet to be resolved by the Second Circuit or other federal courts.  Plaintiff cites no legal prohibition on the use of OCR, or any caselaw addressing the issue.  This Court has likewise found no statute, regulation, or caselaw addressing the appropriate use of OCR technology in the context of an SSDI claim.  However, the Court need not resolve that complicated issue in this case.  Regardless of the technology used, the ALJ's decision failed to follow the regulatory requirement that she adequately explain the supportability or consistency factors that led her to conclude that Dr. O'Hagen's opinions were unpersuasive.  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

To begin with, the ALJ's statement that Dr. O'Hagen's notes were "almost exclusively" about Plaintiff's alcohol abuse is inaccurate, and unsupported by Plaintiff's medical records. (T. 21.)  The Court's review of the approximately 1400 pages of Plaintiff's VA medical records found multiple treatment notes depicting Dr. O'Hagen's focus on Plaintiff's PTSD.  For example, Dr. O'Hagen's March 8, 2018, outpatient progress notes show that the bulk of the 45-minute session addressed Plaintiff's PTSD diagnosis, Plaintiff's desire to use medical marijuana to control his PTSD symptoms, and the fact that Plaintiff had been flagged as a high suicide risk. (T. 1232-36.)  On March 14, 2018, Dr. O'Hagen's notes reflect that following "a comprehensive chart review, including review of [Plaintiff's] current diagnoses and treatment plan," he

recommended that Plaintiff engage in an "enhanced" program to address his PTSD, due in part to Plaintiff's "high statistical risk for suicide and other adverse outcomes." (T. 1227.) A treatment plan prepared by Dr. O'Hagen on June 19, 2018, identified Plaintiff's relevant medical conditions as alcohol dependence and chronic PTSD following military combat, and set out separate treatment objectives for each condition. (T. 1684.)

Likewise, the ALJ erred by stating that "mental status examinations focusing on any PTSD are absent." (T. 21.) Dr. O'Hagen's own treatment notes reflect multiple mental status examinations that were apparently overlooked by the ALJ. (T. 1686, 1693, 1732-1733, 1821.) In addition, the records list Dr. O'Hagen as Plaintiff's "mental health treatment coordinator" within the VA medical system. (T. 989.) As a result, Dr. O'Hagen was regularly copied on treatment notes from other VA medical professionals including physicians, registered nurses and social workers. (T. 989, 2313-2314.) Plaintiff's VA treatment records from these other providers include multiple mental status examinations that address issues related to his PTSD. (T. 656-659, 1004-1005, 1222-1224, 1734, 1921-1922, 2327-2328, 2338.) Those records also document Plaintiff's participation in cognitive processing therapy to specifically address his PTSD. (T. 2337.)

There was evidently a delay in obtaining all of Plaintiff's medical records from the VA. Plaintiff notified the ALJ of this delay in June 20, 2018, correspondence. (T. 241-242.) While the reasons for that delay are unclear from the record, it is clear that some or all of the VA medical records were not available at the time of Plaintiff's first administrative hearing on July 11, 2018, and were only provided to the ALJ sometime before the supplemental hearing on

March 27, 2019.  (T. 13, 49.)  The ALJ's decision was issued a few days later, on April 2, 2019, suggesting a hurried or inadequate review of relevant treatment records.

       This inadequate review tainted the ALJ's analysis of Dr. Hagen's opinion as well as the opinions of Dr. Jenouri, Dr. Saeed, Dr. Long, and Dr. Kamin.  The ALJ never referenced any of the VA treatment records in her discussion of any of these opinions, even when it would have been clearly relevant to her analysis of "supportability and consistency" with the overall record.  (T. 18-21.)

       For example, Dr. Saeed opined that Plaintiff should avoid workplace hazards such as machinery and heights due to his history of seizures brought on by alcohol withdrawal.  (T. 65.)  The ALJ found Dr. Saeed's opinion on this point to be unpersuasive, and unsupported by the record. (T. 19-20.)  The ALJ stated that "[s]ince [Plaintiff] is in recovery from his drug and alcohol abuse, he no longer has seizures, thereby making any associated precautions unnecessary."  (T. 20.)  The ALJ appears to have based this conclusion on Plaintiff's statements to Dr. Jenouri and Dr. Long during his consultative examinations that he had stopped drinking alcohol in September 2017. (T. 953, 959.)

       In fact, Plaintiff's VA treatment records dated February 28, 2018, show that Plaintiff had not yet been able to maintain long term sobriety, with documentation of at least fifteen attempts to stop using alcohol in the prior three years.  (T. 1326.)  During therapy sessions, Plaintiff reported that alcohol was "the only thing that takes away his anxiety and paranoia."  (T. 1734.)  His VA treatment records show treatment for alcohol abuse and withdrawal symptoms in February 2018, April 2018, May 2018, August 2018, September 2018, and October 2018. (T. 965, 972, 1021, 1574, 1734, 1788, 1848, 1971, 1973.)  This includes at least one seizure incident

brought on by alcohol withdrawal.  (T. 1973.)  In November 2018, Plaintiff reported to Dr.

O'Hagen that hat he had recently completed a detoxification program but "predicted he will be

drinking again by the Christmas holiday."  (T. 1733.)  The ALJ did not discuss any of these

records in her RFC determination, despite the obvious relevance to Dr. Saeed's opinion about

Plaintiff's risk of seizures and the ALJ's conclusion that Plaintiff was "in recovery" from alcohol

abuse.[7]  (T. 20.)

       In pointing out the sizable gap in the ALJ's recitation of the facts and Plaintiff's medical

history, the Court is not reaching a conclusion on the ultimate determination of disability.  The

ALJ is responsible for reviewing all the medical and other evidence before her, resolving any

inconsistencies therein, and making a determination consistent with the evidence as a whole.  *See*

*Bliss v. Colvin*, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) (Sharpe, C.J.) ("It

is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts

where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, 12-CV-

1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (Kahn, J.).  Thus, in formulating

Plaintiff's RFC, the ALJ was not required to accept every limitation in the various medical

opinions nor craft an RFC mirroring a particular opinion.  *See Matta v. Astrue*, 508 F. App'x 53,

56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the

---

[7]     If the ALJ found that Plaintiff was currently abusing drugs or alcohol, it would have
added another layer to the five-step analysis.  In such cases, the ALJ must "determine whether
the substance abuse is a contributing factor material to the determination of disability—that is,
whether the claimant would still be found disabled if he stopped using drugs or alcohol." *Colbert
v. Comm'r of Soc. Sec.*, 18-CV-0702, 2019 WL 6648562, at * (W.D.N.Y. Dec. 6, 2019)
(quotation omitted); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012)
("[t]he critical question is whether the SSA would still find the claimant disabled if [he] stopped
using drugs or alcohol"); *see also* 20 C.F.R. §§ 404.1535(a), 404.1535(b)(1).

opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole.").

Likewise, an ALJ is not required to explicitly analyze every piece of conflicting evidence

in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v.

Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to

reconcile every conflicting shred of medical testimony).  However, an ALJ cannot "'pick and

choose' evidence in the record that supports his conclusions."  *Cruz v. Barnhart*, 343 F. Supp. 2d

218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6

(W.D.N.Y. Dec. 6, 2010).  Similarly, the ALJ's determination should not be premised on an

inaccurate or incomplete review of the record.  *See Marobella v. Colvin*, 15-CV-0843, 2016 WL

8672960, at *10 (N.D.N.Y. July 15, 2016) (Dancks, M.J.) (remanding where ALJ relied on an

erroneous interpretation of Plaintiff's medical records); *see also Cotter v. Harris*, 642 F.2d 700,

705 (3d Cir. 1981) (remanding where " the reviewing court cannot tell if significant probative

evidence was not credited or simply ignored" by ALJ).

Here, the ALJ's decision made only passing reference to more than 1400 pages of

Plaintiff's mental health records, including some, as outlined above, that directly contradicted the

ALJ's recitation of the facts.  (T. 13, 21.)  This inadequate review failed to set forth the crucial

factors justifying the ALJ's findings with sufficient specificity to allow the Court to determine

whether substantial evidence supported the assigned persuasiveness of the opinions of Dr.

O'Hagen, Dr. Long, Dr. Saeed, Dr. Jenouri, and Dr. Kamin in accordance with the regulations.

Therefore, the ALJ's RFC determination, and the ultimate determination of disability, were not

supported by substantial evidence.

Plaintiff also contends that the ALJ should have considered the fact that the VA had previously rated Plaintiff "100% disabled" due to his PTSD.[8] (T. 574, 1086.)  Defendant correctly points out that the Commissioner revised the regulatory requirement that an ALJ "ordinarily give great weight to a VA determination of disability" unless she gave "persuasive, specific, valid reasons for doing so."  *See Kathleen S. v. Comm'r of Soc. Sec.*, C19-5167, 2019 WL 4855631, at *8 (W.D. Wash. Oct. 2, 2019) (contrasting current and former regulation regarding VA disability determination).  However, the ALJ's wholesale omission of the VA records from her analysis is still contrary to the amended SSA regulations.

Under 20 C.F.R. § 404.1504, for claims filed on or after March 27, 2017, the Commissioner "will not provide any analysis in [his] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits."  However, the ALJ must nonetheless still "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security disability claim. 20 C.F.R. § 404.1504.  An ALJ satisfies this obligation by discussing relevant VA medical records as part of his or her RFC determination.  *See Kathleen S.*, 2019 WL 4855631, at *8; *Jones v. Berryhill*, 392 F. Supp. 3d 831, 853 (M.D. Tenn. 2019) (finding that ALJ properly considered VA medical records when she explained that she found them unpersuasive because they reflected largely unremarkable mental status examinations).  The ALJ failed to meet that obligation in this case, and should address it on remand..

---

[8]     The VA assigns veterans a disability rating based on the severity of their disability. The rating is expressed as a percentage, representing how much the disability decreases overall health and ability to function.  https://www.va.gov/disability/about-disability-ratings/

Plaintiff also argues that the ALJ further erred in finding that Plaintiff retained the ability to remain on task and maintain a consistent schedule, and overemphasized Plaintiff's activities of daily living as proof of his ability to work.  (Dkt. No. 7 at 6-7, 12.)  Because such findings will necessarily depend on the ALJ's evaluation of the full record on remand, the Court will not address them here.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: October  1, 2020
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge